ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7028
FAX: (415) 436-7234
Martha.boersch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | NO. CR-24-00380-JD |
| Plaintiff, ) | |
| ) | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING** |
| v. ) | |
| OSCAR LAINEZ, ) | Date: August 12, 2024 |
| ) | Time: 10:30 a.m. |
| Defendant. ) | Court: Hon. Judge Donato |

## I.   OVERVIEW

The United States and the defendant, Oscar Lainez, having submitted a proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B), jointly request that the Court impose the sentence recommended by the United Staes, that is, time served plus one business day and a three year term of supervised release with specific conditions as specified in the Plea Agreement and Appendix A. This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history, leading the United States to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that

immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking. For the reasons set forth below, the United States and the defendant believe that a below-Guidelines sentence—accounting for the time served plus one day in this expedited prosecution—alongside the geographical restriction and other terms of supervised release meet the statutory requirements of Section 3553(a).

## II.   MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable. This will achieve the expedited proceeding contemplated by both parties. The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b). The government respectfully submits that the record here—the Criminal Complaint, the Plea Agreement, and the parties' sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III.   APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a. Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(8):                                               24
   Defendant possessed between 100 and 400 KG of Converted Drug Weight[1]

b. Acceptance of Responsibility, U.S.S.G. §3E1.1:                                                   - 3

c. Zero-Point Offender:  U.S.S.G. §4C1.1                                                            -2

d. Adjusted Offense Level:                                                                           19

The government calculates a Criminal History Category of I (0 points).[2]

---

[1] *See* Addendum – Converted Drug Weight Table.

[2] The government has reviewed and produced in discovery the criminal history report for the

An Adjusted Offense Level of 19 and a Criminal History Category of I results in a Guidelines range of 30 to 37 months.

The government also seeks a three-year term of supervised release (as required by statute) with all conditions specified in the Plea Agreement and imposition of the $100 mandatory special assessment.

### IV.   SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time served plus one day and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

**A.   Section 3553 Factors**

1. ***Nature and circumstances of the offense and history and characteristics of the defendant***

The defendant is a 29-year old who was born in Honduras. As indicated in the proposed Plea Agreement (Para. 2), the defendant is not a citizen of the United States and entered this country illegally. The parties expect that the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals. To the government's knowledge, the defendant has no prior criminal convictions, placing him in Criminal History Category I.

On or about May 7, 2024, in the Tenderloin District of San Francisco in the vicinity of the 700 block of O'Farrell, Lainez was arrested for possession with intent to distribute fentanyl with a gross weight of 11.7 grams. He has admitted in his Plea Agreement that he knew this substance was a controlled substance and that it was illegal for him to possess and illegal to possess with the intent to distribute. Before his arrest on May 7, Lainez had sold 2.2 grams of fentanyl to an undercover officer in exchange for $20 of pre-marked U.S. currency. During a search incident to his arrest, Lainez was found in possession of an additional 9.5 grams of fentanyl (for a total of 11.7 grams of fentanyl); 41.5 gross

---

defendant available through the National Crime Information Center, a criminal records database. That report reflects that the defendant does not have any prior criminal convictions.

grams of a mixture or substance containing a detectable amount of methamphetamine, 50 gross grams of cocaine HCL, 13.2 gross grams of cocaine base, 69.1 gross grams of suspected heroin (not presumptively tested), plastic baggies used for packaging the controlled substances, and $952 of U.S. currency that were drug sale proceeds. The combined, converted drug weight of the substances Lainez possessed (excluding the heroin) was approximately 145.63 kilograms. The sale to the undercover officer and Lainez's arrest were captured on officers' body-worn cameras.

Lainez was charged by the state and released with electronic monitoring. On May 30, 2024, Lainez was charged federally by complaint and was arrested on the federal complaint on or about June 28, 2024, and made his initial appearance in federal court on July 1, 2024. After his federal arrest, Lainez agreed to remain in custody during the pendency of this case. In his Plea Agreement, Lainez acknowledges that a conviction in this case makes it a virtual certainty that he will be removed or deported from the United States. Plea Agreement, ¶ 1.

### 2. *Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant*

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Unsurprisingly, given the relevant conduct and amount of controlled substances the defendant possessed, the adjusted Guidelines range for the defendant's conduct is 30 to 37 months. The defendant has no known criminal history. The proposed sentence—of time served plus one day and a three-year term of supervised release with a highly-restrictive geographic restriction—is a downward variance from the Guidelines range but one that the government submits is appropriate given the defendant's conduct

and criminal history, the unique problem the Tenderloin faces, and the need for deterrence and protection of the public.

In order for the defendant to receive this plea offer, the defendant waived detention and has been in continuous custody since his federal arrest; the government offered the defendant a time-served sentence in exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing (including waiving indictment) within weeks of his federal arrest; the defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations.

This disposition results in a drug trafficking conviction within weeks of his federal arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

**B.**     **The necessity of the proposed supervised release special conditions**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by

the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

## V. CONCLUSION

For these reasons, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement and Appendix A, including the stay-away condition.

DATED: July 29, 2024                                                    Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney


  */s/ Martha Boersch*
MARTHA BOERSCH
Assistant United States Attorney

## ADDENDUM – CONVERTED DRUG WEIGHT TABLE[3]

| Substance | Amount Possessed by Defendant | Conversion | Converted Drug Weight |
|---|---|---|---|
| Cocaine base | 13.2 grams | 1 gram = 3,571 grams | 47.137 kilograms |
| Fentanyl | 11.7 grams | 1 gram = 2.5 kilograms | 5.5 kilograms |
| Methamphetamine | 41.5 grams | 1 gram = 2 kilograms | 83 kilograms |
| Cocaine HCL | 50 grams | 1 gram = 200 grams | 10 kilograms |
| **Total** | - | - | **145.63 kilograms** |

---

[3] *See* §2D1.1, Application Note 8(D).